UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Misti Gill, | No. 1:25-cv-01683-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | (ECF Nos. 13, 15) |

## I.     Introduction

Plaintiff Misti Gill seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act.

## II.     Procedural Background

On June 7, 2023, Plaintiff applied for SSI.  Plaintiff alleged disability as of June 7, 2023. These claims were denied initially on December 13, 2023, and on reconsideration on June 14, 2024.

On November 27, 2024, a hearing was held before an ALJ.  On December 12, 2024, the ALJ issued an unfavorable decision.  The Appeals Council denied the request for review on September 30, 2025.  Plaintiff then filed a complaint in this Court on November 26, 2025.[1]

## III.     The Disability Standard

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 7, 8.

1

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but it is less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 7, 2023, the application date.  AR 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: right tibia and fibula fracture, degenerative disc disease of the cervical and lumbar spine, anxiety disorder, and bipolar disorder.  AR 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20–22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 416.967(b), except:

> she can occasionally climb ramps and stairs but cannot climb ladders, ropes or scaffolds. She can occasionally balance as that term is defined in the Dictionary of

3

Occupational Titles (DOT), stoop, kneel, crouch, and crawl. She can understand, remember and carry out simple instructions and can interact with supervisors, co-workers and the general public frequently.

AR 22–28.

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 28.  At step five, relying on the Vocational Expert's testimony, the ALJ found that considering Plaintiff's vocational profile (age, education, work experience and RFC), Plaintiff could perform the following jobs existing in significant numbers in the national economy: cashier II, sales attendant, and housekeeping cleaner.  AR  28–29.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of June 7, 2023.  AR 29.

## V.    Issues Presented

Plaintiff asserts two claims of error: 1- "the ALJ improperly omitted significant medical findings from Dr. Bilik in assessing the residual functional capacity" (MSJ at 4); 2- "the ALJ impermissibly rejected Gill's subjective symptom testimony."  (MSJ at 12).

### A.    Medical Opinion; RFC (Claim #1)

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, when evaluating

any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered.  Id.  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2)..

### 2.    **Analysis**

On reconsideration, state agency physician Dr. Bilik, PsyD., reviewed Plaintiff's medical file. AR 135–147.  Dr. Bilik identified impairments of Depressive, Bipolar and Related Disorders, Anxiety, and Obsessive-Compulsive Disorders. AR 142.  Dr. Bilik opined that Plaintiff had <u>moderate limitations</u> in the ability to: **1-** maintain attention and concentration for extended periods; **2-** interact appropriately with the general public; and **3-** complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 144–46. The **3**rd limitation is the one at issue here.

The ALJ addressed the opinion as follows:

On reconsideration, Harvey Bilik, Psy.D., found the claimant's mental impairments caused mild limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and mild limitations in adapting or

managing oneself. Dr. Bilik opined that the claimant <u>could understand and remember simple and detailed instructions</u> *despite any limitations in this domain*. The claimant could carry out simple and detailed tasks despite any limitations in this domain. The claimant could interact appropriately with others, but may benefit from reduced contact with the general public. The claimant could adapt despite any limitations in this domain (Exhibit B7A/8, 12).

. . .

However, I find Dr. Bilik's opinion partially persuasive. I do not find the mild limitation in understanding, remembering and applying information to be supported. In light of the claimant's alleged difficulty remembering to take medication, following instructions, and taking medications without reminders, I find a moderate limitation more consistent with the overall evidence. Further, the reduced contact with the general public is not supported. Although the claimant reported difficulty getting along with others, she was able to interact appropriately with her providers. She was able to relay her history and medical needs. She was not longitudinally irritable; in fact, her medical providers did not often note this to be an issue (Exhibits B2F; B5F; B8F; B9F; B12F). This does not suggest that the claimant would benefit from reduced contact with the general public. As these aspects of the opinion are not entirely consistent with the evidence or supported by the other opinions in this case (namely the opinions of Dr. Hamill), these aspects of the opinion are not persuasive. Otherwise, I find this opinion generally well supported by and consistent with the evidence to be persuasive.

AR 28 (emphasis added).

Plaintiff argues that other than the mild limitation in understanding, remembering and applying information, and reduced contact with the general public, the ALJ found the remainder of Dr. Bilik's opinion to be supported yet omitted a key corresponding limitations in the RFC and failed to explain why. Specifically, Plaintiff contends the ALJ erred in omitting moderate limitations in <u>completing a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.</u>

Plaintiff sets forth the following concerning this argument:

Donald J.M. v. O'Malley, No. 22-cv-1926-MMP, 2024 U.S. Dist. LEXIS 58365, at *52-59 (S.D. Cal. Mar. 29, 2024) citing Morinskey v. Astrue, 458 F. App'x 640, 641 (9th Cir. 2011); see also Martin v. Comm'r of Soc. Sec. Admin., 472 F. App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); Bain v. Astrue, 319 F. App'x 543, 545−46

(9th Cir. 2009) (holding ALJ erred in not discrediting or including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); Harrell v. Kijakazi, No. 1:20-cv-00614-GSA, 2021 U.S. Dist. LEXIS 184794, at *11 (E.D. Cal. Sep. 24, 2021) ("The ALJ was under no obligation to accept a medical opinion he found unsupported by the record. But, having clearly stated that he was according [the physician]'s opinion great weight, the ALJ was under an obligation to account for the moderate limitations [the physician] identified irrespective of the broader reasoning in support of the RFC."); Christopher G. v. Saul, No. 2:19-cv-06150- AFM, 2020 U.S. Dist. LEXIS 76761, at *15-20 (C.D. Cal. Apr. 30, 2020) (error where the ALJ afforded weight to a medical opinion but did not explicitly reject the opinion and provided no reason for failing to include the limitations in her RFC assessment); Sahyoun v. Saul, No. 2:18-cv-576-EFB, 2020 U.S. Dist. LEXIS 54098, at *7 (E.D. Cal. Mar. 27, 2020) (same). Simply put, an ALJ errs when they do not explain why they did not adopt all findings or limitations from a persuasive opinion. Patterson v. Comm'r of Soc. Sec., No. 2:23-cv-00635 AC, 2024 U.S. Dist. LEXIS 167482, at *22-23 (E.D. Cal. Sep. 17, 2024).

MSJ at 4–5

Initially, it is important note that despite the limitation in question,[2] Dr. Bilik's examination resulted in a finding of non-disability.  Additionally, although this limitation was not independently articulated by Dr. Bilik, it was nevertheless one of several work-related abilities included on a form Dr. Bilik filled out.  This form requested the clinician to identify a rating (not limited, moderately limited, etc.,). At the outset the form states, "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity [MRFC] assessment is recorded in the narrative discussion(s)." AR 145, 146 (emphasis added). The moderate limitation at issue here is found under a domain titled, "Sustained Concentration and Persistence Limitation." AR 145.  At the place where the form requests a narrative explanation regarding this domain, Dr. Bilik types, "SEE BELOW." AR 145.  Dr. Bilik then skips down to the next domain on the form which is titled, "Social Interaction Limitation." At this location on the form is where Dr. Bilik inserts his narrative explanation.  Although his explanation is located at

---

[2] Completing a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.

the end of the Social Interaction domain, it is logical to infer that it applies to both domains given that he typed the word "SEE BELOW" when he was directed on the form to explain his opinion concerning Plaintiff's capabilities for sustained concentration and persistence.   This appears so notwithstanding that the wording in his explanation includes "in this domain".   Dr. Bilik's full explanation follows and is found under the heading, "MRFC Additional Explanation":

> The claimant can understand and remember simple and detailed instructions despite any limitations in this domain. The claimant can carry out simple and detailed tasks despite any limitations in this domain. The claimant can interact appropriately with others, but may benefit from reduced contact with the general public. The claimant can adapt despite any limitations in this domain.

> AR 146 (emphasis added).

Further, and just as important, because Dr. Bilik found only a moderate limitation in this domain, which is the basis of Plaintiff's first claim of error, this finding would not necessarily preclude Plaintiff from carrying out simple tasks as the RFC indicates, nor would it likely even preclude Plaintiff's from carrying out detailed tasks which is beyond what the RFC requires.

Plaintiff 's argument continues:

> While the limitation of Gill to simple instructions may reflect Dr. Bilik's moderate limitation in attention and concentration for extended periods, the ALJ's residual functional capacity assessment clearly does not contain Dr. Bilik's limitation on completing a normal workday and to perform at a consistent pace without an unreasonable number and length of rest periods.
> That is because a limitation to simple work does not adequately account for limitations on completing a normal workday/workweek or the need for an unreasonable number of rest periods.

> MSJ at 6 (emphasis added).

Plaintiff goes on to cite caselaw which stands for the proposition that a limitation to simple work, as the RFC specifies here, does not adequately account for limitations on completing a normal workday/workweek without the need for an unreasonable number of rest periods. Plaintiff's citations follow:

> Harrell v. Kijakazi, No. 1:20-cv-00614- GSA, 2021 U.S. Dist. LEXIS 184794, at

*17-18 (E.D. Cal. Sep. 24, 2021) (finding that the more recent weight of authority refutes the "notion that a limitation to simple/routine tasks with limited public contact adequately accounts for other limitations in social interaction, maintaining attendance, completing a normal workday without interruptions from a psychiatric condition, and handling work related stressors")(collecting cases); D.L. v. Kijakazi, No. 2:22-cv-07523-SHK, 2023 U.S. Dist. LEXIS 199338, at *19-20 (C.D. Cal. Nov. 6, 2023) (limitation to simple tasks does not adequately account for moderate limitations in the ability to maintain regular attendance or complete a normal workday); and Donna M. v. Saul, No. 19-cv-03134-DMR, 2020 U.S. Dist. LEXIS 204573, at *12 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace and perform work activities on a consistent basis, and perform work activities without special or additional supervision). The ability to perform work activities on a consistent basis without unreasonable rest periods and/or maintain attendance and complete a normal workday/workweek are key limitations. See Macias v. Saul, No. 1:19-cv-01187- BAM, 2021 U.S. Dist. LEXIS 43161, at *15-18 (E.D. Cal. Mar. 5, 2021) (collecting cases noting that limitation to simple tasks does not account for moderate limitations, such as working on a consistent basis without special or additional instruction and completing a normal workday or workweek without interruptions from a psychiatric condition).

However, the limitation in question here is actually the inverse of Plaintiff's argument. Specifically, it is not whether a moderate limitation in this particular domain[3] would allow for the performance of simple work, but rather as Dr. Bilik articulated on the form, the moderate limitation identified would not preclude Plaintiff from performing simple work.

In sum, Plaintiff establishes no error as to this claim.

## B.    Subjective Symptoms (Claim # 2)

---

[3] There is also authority indicating that moderate limitations are not work preclusive, and that a claimant with such limitations can still function satisfactorily. See, e.g., Rose M. E. v. Saul, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines moderate limitations to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'"). There is also caselaw indicating that a limitation to simple work, while not a catchall, does adequately account for many work restrictions. Messerli v. Berryhill, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017), Rogers v. Comm'r of Soc. Sec. Admin., 490 F. App'x 15 (9th Cir. 2012) (holding that an RFC for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations); Henry, 2016 WL 164956, at *18 (simple tasks accounted for moderate social interaction limitations); Langford v. Astrue, No. 07-cv-0366-EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) (same).

9

### 1.    Initial Overview of the Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations.  This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record.  20 C.F.R. § 416.945(a)(1).  The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities.  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record.  Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration,

frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom;  and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

#### a.    Introduction

Plaintiff emphasizes her severe impairments of right tibia and fibula fracture, degenerative disc disease of the cervical and lumbar spine, anxiety disorder, and bipolar disorder.  Plaintiff contends that given these impairments the ALJ erred in finding Plaintiff capable of performing light exertional work, and further contends that the ALJ erred when finding that Plaintiff's activities of daily living were consistent with her ability to perform such work.  MSJ at 13 (citing AR 26). Plaintiff concludes that the ALJ was in error because "Gill actually testified that the limitations she suffers from as a result of the severe impairments limits and prevents her from performing any work activity on a sustained basis let alone light exertion work."  Id. (citing AR 79-85, AR 346-353.).

#### b.    Boilerplate Language; Sufficiency of Objective Evidence

To begin, Plaintiff points to the ALJ's use of boilerplate language, e.g., claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms is not consistent with the record.  Plaintiff acknowledges however that "ALJ's include this substantially same language as a matter of routine in nearly every decision" (MSJ at 15 (citing Trevizo v. Berryhill, 871 F.3d 664, 678 n. 6 (9th Cir. 2017)),  and adds that  "The inclusion of this routine language itself is not the error; rather the issue is whether the ALJ provided specific, clear, and convincing reasons for his credibility determinations."  MSJ at 15.

Plaintiff also contends that the ALJ wrongly relied solely on objective medical evidence,[4]

---

[4] Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record.  Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

11

and that subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record.  See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Plaintiff then turns to a recitation of law along with argument.

### c.    Plaintiff's Recitation of Law & Argument

Taken from Plaintiff's motion for Summary Judgment is the following:

Also, the ALJ's routine statement that Gill's testimony is not entirely consistent with the "other evidence in the record" (AR 25) is also not sufficient. This statement of the ALJ is too vague to permit the Court to conclude the ALJ did not arbitrarily discredit Gill's testimony. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."). While it is proper for the ALJ to consider the objective medical evidence in making a credibility determination, 20 C.F.R. § 404.1529(c)(2), "[t]he ALJ may not make a negative credibility finding 'solely because' the claimant's symptom/pain testimony 'is not substantiated affirmatively by objective medical evidence,'" Karen M. v. Saul, No. 2:20-cv-06202-GJS, 2021 U.S. Dist. LEXIS 89868, at *10 (C.D. Cal. May 11, 2021) (quoting Robbins, 466 F.3d at 883). That is precisely what the ALJ did in this matter.

At no point did the ALJ "identify the specific testimony" that is undermined by plaintiff's treatment history. See Lambert, 980 F.3d at 1268 ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."). The lack of connection by the ALJ between Gill's specific testimony and the medical evidence is legal error. See Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding legal error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity of her . . . . pain"); see also Isis A. v. Saul, No. 18cv01728-W-MSB, 2019 U.S. Dist. LEXIS 130801, at *12 (S.D. Cal. Aug. 2, 2019) ("The ALJ's generic references to Plaintiff's statements as 'complaints of disabling symptoms and limitations' . . . . did not specifically identify the statements that the ALJ was discrediting."), report and recommendation adopted sub nom. Avina v. Saul, No. 18-CV-1728-W (MSB), 2019 U.S. Dist. LEXIS 140324 (S.D. Cal. Aug. 19, 2019).

The ALJ's articulated rationale simply that Gill's statements and testimony are inconsistent with the objective medical evidence is not enough. AR 25 (statements are "inconsistent because those allegations are greater than expected in light of the objective evidence of record."). Rejecting a claimant's testimony simply because it is inconsistent with the objective medical evidence and residual functional capacity is plainly disallowed. Treichler, 775 F.3d at 1103 (ALJ's allegation that a claimant's testimony is not consistent with the objective medical evidence is insufficient to reject that testimony); Trevizo v. Berryhill, 871 F.3d at 678 n. 6 (9th Cir. 2017) (rejecting a claimant's subjective symptoms as inconsistent with the residual functional capacity assessment inverts the responsibility of an ALJ and

indicates that the ALJ fails to properly incorporate a claimant's testimony regarding subjective symptoms and pain into the residual functional capacity finding as required).

The ALJ also articulates that Gill's activities suggest that Gill is not as limited as she describes and in fact support that she can perform work. AR 25. The ALJ is wrong. That is because nothing in Gill's descriptions of her limitations or as described by the ALJ or anywhere else in the record or in the decision indicates that she is capable of maintaining substantial gainful work activity as defined by the Commissioner, let alone the demands of medium exertion[5] work.

Substantial gainful work activity is the ability to sustain work activity "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p. Substantial gainful work activity is certainly not defined as requiring an individual's disability and limitations render him comatose or totally disabled. See Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity).

An ALJ may rely on Gill's activities to discount Gill's statements about her symptoms and limitations only when those activities either: (1) "contradict" the testimony; or (2) "meet the threshold for transferable work skills"—that is, where Gill "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted); see also Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (same).

Gill's sporadic activities as described in her testimony (AR 79-85, AR 346-353) or in this record do not contradict her testimony nor do they demonstrate an ability to spend a substantial part of the day doing activities transferable to a fulltime work setting. The fact that Gill has some ability some of the time to perform something is not reason enough to find a lack of credibility. See Lester v. Chater, 81 F.3d at 833 ("Occasional symptom-free periods - and even the *sporadic* ability to work - are not inconsistent with disability" because the ALJ must evaluate the claimant's "ability to work on a sustained basis"). Evidence that a claimant can participate in basic human function "is not determinative of disability." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). (Emphasis added)

But the ALJ ignores that by itself the fact that an individual may perform some activities like Gill does not affect credibility; rather it is an individual's daily activities and the relation of those activities to gainful work which offer insight to an individual's credibility. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility").

Gill's descriptions of her activity levels in her testimony are far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis. The ALJ points to Gill's reported ability to perform basic activities such as cook, clean, and help her mother. AR 26. The ALJ is wrong because the ALJ focus is on what is being done and not how it is done and whether it relates to the ability to perform work activity for 8 hours a day.

The ALJ ignores that it is not only an individual's daily activities but the

---

[5] The RFC was for light work, not medium work.  AR 22.

relation of those activities on a sustained basis to gainful work which offer insight to an individual's credibility. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility"). The ALJ makes no effort to state how those activities relate to the ability to perform sustained work activity over an 8-hour workday. AR 26. Something that is required. Social Security Ruling 96-8p.

To reject Gill's statements about her symptoms and limitations her activities must contradict the testimony; or to invert it, Gill's statements about her symptoms and limitations and her activities must support the ability to physically and mentally perform medium level exertion[6] as the ALJ unreasonably concludes. The testimony of Gill does not support the conclusion that she can mentally and physically perform medium exertion work.[7] Social Security Ruling 83-10.

MSJ at 17-21.


An ALJ may rely on <u>Gill's activities</u> to discount <u>Gill's statements</u> about <u>her symptoms and limitations</u> only when those activities either: (1) "contradict" the testimony; or (2) "meet the threshold for transferable work skills"—that is, where Gill "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted); see also Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (same).

MSJ at 19 (emphasis added)

Notably, the portions of the above which contain argument are bereft of specific supporting facts drawn from the record.  For example, Plaintiff refers to "her symptoms and limitations," but does so without identifying which symptoms or limitations.

In another example, Plaintiff states:

Gill's <u>sporadic activities</u> as described in her testimony (AR 79-85, AR 346-353) or in this record do not contradict her testimony nor do they demonstrate an ability to spend a substantial part of the day doing activities transferable to a fulltime work setting. The fact that Gill has <u>some ability some of the time to perform something</u> is not reason enough to find a lack of credibility.  MSJ at 19 (emphasis added).

In this example, Plaintiff merely references roughly 15 pages of testimony (e.g. AR 79-85,

---

[6] The RFC is for light work, not medium work.  AR 22.
[7] Same

14

and AR 346-353) without drawing the Court's attention to any specific activity.

Of final note, Plaintiff misidentifies the exertional level as **medium** and does so three times in the above quoted pages when the actual exertional level provided by the ALJ was an ability to perform **light** exertional work.  See, e.g., MSJ at 19 ("let alone the demands of <u>medium</u> exertion work") (emphasis added); MSJ at 21 ("her activities must support the ability to physically and mentally perform <u>medium</u> level exertion as the ALJ unreasonably concludes") (emphasis added); MSJ at 21 ("The testimony of Gill does not support the conclusion that she can mentally and physically perform <u>medium</u> exertion work.") (emphasis added).

### d.    <u>Applicable Law</u>

As a starting point, an ALJ may not summarily dispense with a Plaintiff's testimony concerning symptom severity by simply stating that it is inconsistent with the record.  An ALJ needs to identify the testimony in question and then when relevant identify where it is inconsistent with the record. When an ALJ evaluates a claimants subjective complaints, the following is instructive:

> In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. The claimant is not required to show that his/her impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of the symptoms only if they give "specific, clear and convincing reasons" for the rejection. [*14]  Id. As the Ninth Circuit has explained:  The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.  Tommasetti, 533 F.3d at 1039 (citations and internal quotation marks omitted); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226-27 (9th Cir. 2009).

15

Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Further,

While "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability, ... if an individual alleges impairment-related symptoms, [the Agency] must evaluate those symptoms." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304. Importantly, "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *2. Instead, the ALJ must first determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In determining whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms, [ALJs] do not consider whether the severity of an individual's alleged symptoms is supported by the objective medical [*12] evidence." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *3. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison, 759 F.3d at 1014 (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies the first step as mentioned above, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *3. If there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Again, unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Accordingly, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated

16

so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *10. "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work ...." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." Ferguson v. O'Malley, 95 F.4th 1194, 1199 (9th Cir. 2024). Sandra C.H. v. O'Malley, No. EDCV 23-1583 PVC, 2024 U.S. Dist. LEXIS 158907, at *11-14 (C.D. Cal. Sep. 3, 2024).

Finally, as to a reviewing court's role, as explained in the Defendant's Responsive Brief:

> Because the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the Court must apply  the following standard of review for this finding which, "isn't whether [a reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022)

### e.    Plaintiff's Subjective Complaints

Plaintiff explained her intolerance to extended standing and sitting due to back spasms, her intolerance to walking due to screws in her ankle, her ability to lift no more than 15 pounds, had anxiety around too many people, and had anxiety with too many things going on at once.

As to the ability to lift no more than 15 pounds, this is not materially different from the demands of light work which requires 20 pounds.

As to anxiety, the ALJ identified Plaintiff's positive response to treatment and normal mental status exams. As well, the RFC specifies a reduction to frequent interaction with peers, supervisors and the general public.  AR 22.  (See below)

As to an ALJ not solely relying on objective evidence, the ALJ here did not. The ALJ relied on the Plaintiff's daily activities along with reports Plaintiff made to her providers of significant symptom relief from treatment.  Notably, reports of significant symptom relief are not considered objective evidence, but subjective, and the mere fact that such evidence appears in a medical record

does not automatically make it objective.

Counsel's discussion of her testimony is as follows:

Gill testified at her administrative hearing and submitted written statements. AR 79-85, AR 346-353. Gill is unable to work because she cannot sit or stand for very long. AR 80. Gill has to move around due to lower back spasms. AR 80-81. Gill will have to sit down for relief due to muscle spasms in her back. AR 81. Gill has difficulty walking due to screws in her ankle which cause her pain. AR 81, AR 346. Gill can lift only 10 to 15 pounds at most. AR 81. Gill can sit for about 30 minutes before she needs to get up and can be on her feet for 20 to 30 minutes before she needs to sit down. AR 82.

Gill tries to do chores around the house but cannot do them for many minutes at a time without having to sit down. AR 82. It hurts Gill to put on pants. AR 347. Gill has had five suicide attempts. AR 83. Gill has anxiety around people and gets overwhelmed. AR 84. Gill feels overwhelmed with too many things going on at once. AR 84. Gill elevates her legs on the couch with a chair every day because of the screws in her ankle which hurt. AR 84-85

The ALJ's related discussion is as follows:

However, she reported that she was able to live with family; attend to her personal care; take care of her elderly mother; take care of her pets; prepare her own meals; do household chores; spend time with others in person and by text message; go to the grocery store and Walmart regularly; shop for groceries; watch television; and manage finances. The claimant testified that she cannot sit or stand for long periods of time, she has difficulty walking to the mailbox, and she suffers from shoulder spasms due to neck arthritis. her symptoms were treated with medications, chiropractic care, physical therapy, and pain management. In addition, she reported that she receives mental health treatment in the form of medication and she talks to the doctor who prescribes her medication every three months. She acknowledged that the medications help control her symptoms (Exhibits B2E, B3E, B11E; Hearing Testimony).

AR 23.

As to the activity of living with family, this is not especially indicative of a claimant's ability to function in the workplace, whereas Plaintiff's preparing her own meals,  caring for her mother, doing household chores, caring for pets, doing shopping for groceries and managing finances are much more indicative of the ability to do light work in the workplace.

The ALJ also explained that Plaintiff reported "50% pain relief with medications and injections, feeling better with physical therapy, no problems with balance or coordination, and pain

18

0 out of 10 on a pain scale of 1 to 10 (Exhibits B9F/2, 56, 71; B12F/1, 17, 19).  Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. See, Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017).

### /1/   Imaging

The ALJ explained as follows:

Lumbar spine imaging in July 2024 documented diffuse osteopenia, right convex scoliosis, advanced L2-3 spondylosis with endplate sclerosis and vacuum disc phenomenon, mild multilevel spondylosis and facet arthrosis throughout the remainder of the lumbar spine, mild L2 and L3 retrolisthesis, and no spondylosis or spondylolisthesis (Exhibit B8F/116). Cervical spine imaging in July 2024 found diffuse osteopenia, moderate multilevel spondylosis and facet arthrosis, mild C4 anterolisthesis and C5 retrolisthesis, mild bilateral C5-6 and left C6-7 neural foraminal stenosis, and no prevertebral soft tissue swelling (Exhibit B8F/118). Additional imaging of the claimant's cervical spine confirmed moderate degenerative joint disease (Exhibit B9F/78) (emphasis added).

AR 23–24.

Here,  the fact of three mild findings, one moderate finding, and several findings of unstated severity,[8] it is not unreasonable to conclude that Plaintiff's imaging results do not sufficiently corroborate her alleged inability to meet the demands of light exertional work.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

### /2/   Anxiety Disorder

Here, the ALJ explained as follows:

In addition, she reported that she receives mental health treatment in the form of medication and she talks to the doctor who prescribes her medication every three months. She acknowledged that the medications help control her symptoms (Exhibits B2E, B3E, B11E; Hearing Testimony).

AR 23.

The ALJ further noted Plaintiff's testimony:

---

[8] "Diffuse osteopenia, right convex scoliosis, advanced L2-3 spondylosis with endplate sclerosis and vacuum disc phenomenon."

19

Q: And so, what is it that you are experiencing with regard to your mental health issues? Can you kind of explain to me what you experience?
A: Yes. I get real bad anxiety when I get around too many people. Or even, I get anxiety even getting into the car. It's just the thought of getting around that many people or, or, just, it gets me on my nerves and I can't do it.  I – when it comes to not being able to go, and it just overwhelms me with it.
Q: And does the medication seem to help? Does Ativan help?
A: Yes, yes it does. I'm able to do it for a little period of time.
Q: You, can you explain what you mean by that?
A: Like, I'm able to – if I take an Ativan and, and I let it get hold of me, I'm able to, like, go to the grocery store.

AR 84.

And then explained:

The claimant's treatment included psychotropic medication for anxiety disorder and bipolar disorder prescribed by the claimant's primary care providers (Exhibits B2F/20, 25; B12F/42). During treatment, the claimant reported insomnia due to mental disorder, anxiety, depression and bipolar, and difficulty sleeping (Exhibits B8F/14; B9F/15; B12F/2, 8). Despite the claimant's allegations, mental status examinations during treatment showed she was alert and oriented with normal speech, goal directed thought processes, no distractibility noted, normal thought content, intact cognition, good memory, good concentration, good mood, no suicidal ideation, good insight, appropriate mood and affect, and normal judgement (Exhibits B2F/229; B4F/50, 64; B7F/64; B12F/3, 8).

During the psychological consultative examination with Meghan Hamill, Psy.D. in April 2024, the claimant reported symptoms from mental impairments, such as depression, bipolar, and suicidal ideation. She provided a history of overdose attempts on Norco and alcohol, as well as overdose attempts on drugs. She reported being psychiatrically hospitalized at least twice for these reported attempts (B5F/1, 2). The claimant noted treatment off and on with medication, but the claimant reported no mental health treatment with therapy (B5F/2). Regarding activities of daily living, the claimant reported intact ability to bathe, cook, and run errands (B5F/2, 3). During the examination, the claimant presented with slurred speech at times and difficult to understand (B5F/3). Yet, the examination also found the claimant was fully oriented with adequate grooming and hygiene, positive attitude and cooperative, intact cognitive function, no overt impairment in concentration or memory, and no evidence of psychosis (B5F/3, 4). Diagnoses included bipolar I disorder, alcohol use disorder, in reported full remission, amphetamine use disorder, in reported full remission, and cannabis use disorder (Exhibit B5F/4).

AR 25.

As reflected in Plaintiff's testimony, Ativan provided at least some relief from her

20

symptoms, which Plaintiff does not contest. Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. See, Wellington v. Berryhill, 878 F.3d 867, 876 (9thCir. 2017).

Additionally, the ALJ described Plaintiff's primary care visits, acknowledged Plaintiff's reported symptoms, and discussed the mental status examinations which reflected normal findings as to alertness, orientation, speech, thought process, thought content, cognition, memory, concentration, mood, affect, insight and judgment.

The ALJ further acknowledged Plaintiff's history of difficulties with substance use, attempted overdoses, and psychiatric hospitalizations.  Nevertheless, the ALJ explained that Plaintiff was treated with medication off and on.

The ALJ noted that Plaintiff reported she had "no mental health treatment with therapy".  A claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can also undermine her allegations about the severity of an impairment. Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989).

Finally, Plaintiff reported relatively intact activities of daily living, e.g. she could bathe, cook and run errands. Where a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir 2012).

In sum, the ALJ provided clear and convincing reasons to discount Plaintiff's testimony concerning anxiety induced limitations.  The ALJ provided a balanced discussion acknowledging Plaintiff's symptoms, psychiatric history, and hospitalizations.

Ultimately, the ALJ concluded that the evidence did not support more restrictive limitations than the RFC set forth, namely that she can understand, remember and carry out simple instructions and can interact with supervisors, co-workers and the general public frequently.  And even if this

were the situation where the evidence could support two reasonable conclusions, one pointing to a disability finding and the other to a finding of non-disability, where the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005).

As noted above, the standard of review "isn't whether [a reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  It is not the Court's role to "second-guess" an ALJ's reasonable interpretation of a claimant's testimony. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). See Smartt v. Kijakazi, 53 F.4th 489, 500 (9th Cir. 2022).

### h.    Conclusion

In sum, the ALJ identified clear and convincing reasons for rejecting Plaintiff's testimony as to physical and mental symptoms which Plaintiff contends preclude light work.  Specifically, the ALJ relied on: **1-** activities such as caring for her mother, cooking, cleaning, and shopping; **2-** positive response to pain medication and injections, "50% pain relief with medications and injections, feeling better with physical therapy, no problems with balance or coordination, and pain 0 out of 10 on a pain scale of 1 to 10 (Exhibits B9F/2, 56, 71; B12F/1, 17, 19)."; **3-** normal mental status exams; **4-** testimony as to positive response to mental health medication; and **5-**  o other mental health treatment measures, such as therapy, were pursued.

### VI.    Order

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 13) is **DENIED**.

2. Defendant's cross motion (Doc. 15) is **GRANTED.**

3. The decision of the Commissioner of Social Security is **AFFIRMED**.

4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:    **June 12, 2026**                      **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE